IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**STATE VOLUNTEER MUTUAL**
**INSURANCE COMPANY**                                                **PLAINTIFF**

V.                          CASE NO. 5:20-CV-5173

**GUY R. ROSENSCHEIN, M.D.**                                          **DEFENDANT**

### MEMORANDUM OPINON AND ORDER

Plaintiff State Volunteer Mutual Insurance Company has placed two motions before the Court: Motion to Deem Matters Admitted (Doc. 16) and Motion for Summary Judgment (Doc. 18). Each Motion is accompanied by a Memorandum Brief in Support (Docs. 17 & 19, respectively), and Plaintiff also filed a Statement of Facts (Doc. 20). Defendant Guy R. Rosenschein filed a Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 23), a Memorandum Brief in Support of his Response (Doc. 24), and a Statement of Facts (Doc. 25). Plaintiff filed a Reply (Doc. 26). No response was filed to Plaintiff's Motion to Deem Matters Admitted. For the reasons explained below, both of Plaintiff's Motions (Docs. 16 & 18) are **GRANTED**.

### I. MOTION TO DEEM MATTERS ADMITTED

The Court first addresses Plaintiff's Motion to Deem Matters Admitted (Doc. 16). Pursuant to the Federal Rules of Civil Procedure, the recipient of requests for admission must respond within thirty days, or the matter is deemed admitted. *See* Fed. R. Civ. P. 36(a)(3). Plaintiff asserts that it served Defendant with requests for admission on December 2, 2020, and Defendant never responded. Defendant also did not file any

briefing in opposition to Plaintiff's Motion. Therefore, the requests for admission set forth at Doc. 16-1, pp. 1–3 are deemed admitted.[1]

## II. MOTION FOR SUMMARY JUDGMENT

Next, the Court turns to Plaintiff's Motion for Summary Judgment. Ultimately, the Court concludes that no reasonable finder of fact could find in Defendant's favor, and summary judgment for Plaintiff is appropriate.

### A. Background

Plaintiff seeks a declaratory judgment that an insurance policy it issued to Defendant, a Medical Professional Liability Insurance Policy ("the Policy"), does not provide a defense or indemnity for Defendant in a lawsuit against him in state court in New Mexico. Defendant is currently serving a term of imprisonment in New Mexico following his prosecution for possession and distribution of child pornography. In March 2019, a plaintiff identified as John Doe 2 filed suit against Defendant in New Mexico state court.[2] The state-court complaint alleges that in the early 2000s, when Defendant was a licensed physician practicing in Arkansas and John Doe 2 was a minor, John Doe 2 was Defendant's patient and sought treatment for a specific condition. Defendant performed surgery to treat that condition and also allegedly performed an additional surgery on John Doe 2's ingrown toenails at the same time and without consent. Next, John Doe 2's complaint alleges, Defendant began "grooming" John Doe 2 under the guise of providing

---

[1] Furthermore, the Court notes that the requested admissions in Doc. 16-1, p. 1–3 also appear in paragraphs 26–30 of Plaintiff's Statement of Undisputed Material Facts (Doc. 20), to which Defendant does not object. See Doc. 25, p. 1.

[2] Specifically, the case is pending in the New Mexico State Second Judicial District Court, case number D-202-CV-2019-01899, styled *John Doe 2 v. Guy Rosenschein, M.D.*

follow-up care, seeking out a personal relationship with John Doe 2 and his family. John Doe 2 alleges that Defendant then began repeatedly sexually assaulting John Doe 2, first kissing the minor "on his cheeks, then his lips" and then "using his tongue on the child – kissing him all over his body." *Id.* at ¶ 12. The sexual assault then escalated to Defendant allegedly removing John Doe 2's clothing, performing oral sex on him, and attempting to force John Doe 2 to perform oral sex as well. John Doe 2 estimates that these assaults occurred "at least once a month for several years." *Id.* He also fears that Defendant may have taken photos of his genitalia. The complaint alleges eight causes of action against Defendant, including negligence, assault, negligent and intentional infliction of emotional distress, and invasion of privacy.

Defendant was served with the New Mexico suit while incarcerated. Within four months, Defendant had obtained counsel in that suit, who filed a motion to stay proceedings on his behalf. A year later, another law firm contacted State Volunteer seeking defense and indemnity on Defendant's behalf in the New Mexico lawsuit under the Policy issued by State Volunteer. *See* Docs. 2-4 & 2-5. Because the initial demand letter was sent to the wrong address, State Volunteer did not receive notice of the New Mexico lawsuit until August 3, 2020, approximately seventeen months after Defendant was served.

Under the Policy, State Volunteer has a duty to "defend any lawsuit . . . seeking damages resulting from a medical incident . . . ." (Doc. 2-1, p. 11, ¶ 1.4(a)). The Policy defines "medical incident" as an "act or omission . . . that results . . . in damages caused by the rendering of, or failure to render, professional services to any one person." *Id.* at p. 27. The Policy defines "professional services" as "the providing of medical services,

including medical treatment, making medical diagnosis, and rendering medical opinions or medical advice." *Id.* at p. 28. The Policy also includes exclusions for liability "arising, in whole or in part, from sexual conduct," *id.* at p. 12, ¶ 2.6, and for liability "resulting, in whole or in part, from any act or omission that . . . if proven, would violate any statute, ordinance, law, rule or regulation imposing a penalty for one or more criminal offenses," *id.* at ¶ 2.4. Finally, the Policy requires that "[i]f a claim is made or lawsuit is brought against insured, insured shall immediately forward to the Company every demand, notice, summons or other process . . . ." *Id.* at p. 21, ¶ 3.3.

Plaintiff filed suit in this Court seeking a declaratory judgment that the Policy does not provide coverage for any of the claims in the New Mexico lawsuit and that State Volunteer has no duty to defend or indemnify Defendant as to any of those claims. Plaintiff offers three different bases for its assertion: Defendant violated the notice provision by waiting over a year to inform State Volunteer of the lawsuit; the conduct alleged in the state-court complaint is not a "medical incident" within the meaning of the Policy; and the conduct alleged falls within several of the Policy's exclusion provisions. In response, Defendant argues that the references in the New Mexico complaint to an unconsented-to operation on ingrown toenails, *see* Doc. 2-2, ¶ 9, and claims for negligence in "treating, serving, and caring for Plaintiff's condition" or "[f]ailing to act in the manner a reasonably prudent physician would have acted," *id.* at ¶ 17, make it possible that the allegations are within the scope of the Policy and give Plaintiff an obligation to defend Defendant in the state-court proceedings in New Mexico.

### B. Legal Standard

The standard for summary judgment is well established. Under Federal Rule of

Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). However, "the mere existence of a scintilla of evidence in support of the State Volunteer's position will be insufficient" to survive summary judgment. *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, for there to be a genuine issue of material fact that would preclude summary judgment, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248).

### C. Discussion

Plaintiff's first argument is that Defendant is not entitled to coverage under the Policy because he did not inform Plaintiff of the New Mexico lawsuit until seventeen months after he was served, violating the Policy's requirement that Defendant "immediately" provide Plaintiff with a copy of any complaint served upon him. (Doc. 2-1,

p. 21, ¶ 3.3). Since the Court concludes that the Policy would not require Plaintiff to defend or indemnify Defendant in the state-court proceedings even if notice were timely, it does not conduct a further analysis of whether there is a genuine question of fact regarding the timeliness of notice to Plaintiff.

Next, the Court turns to Plaintiff's second argument—that the state-court complaint does not allege a "medical incident" within the meaning of the Policy. "It is well settled that the allegations in a complaint, whether groundless or false, determine the obligation of the insurer to defend its insured within the coverage of the policy." *Fisher v. Travelers Indem. Co.*, 398 S.W.2d 892, 893 (Ark. 1966). "[T]he duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage. Conversely, where there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there would be no duty to defend." *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 61 S.W.3d 807, 813 (Ark. 2001) (internal citation omitted). In assessing whether the allegations in the complaint could possibly fall within the policy coverage, the "'character of the liability is not to be determined by analyzing the constituent acts, which, in combination, make up the transaction, and viewing them distributively. It is determined by the quality and purpose of the transaction as a whole.'" *Fisher*, 398 S.W.2d at 893 (quoting *Messersmith v. Am. Fid. Co.*, 133 N.E. 432, 433 (N.Y. 1921)).

In *Fisher*, an employee was injured by his employer and filed suit. The employer then sought coverage from its insurance company, which refused to reimburse the employer for the judgment and associated costs. The insurance policy covered accidental injuries but not those caused by intentional wrongful acts. The Arkansas Supreme Court affirmed dismissal of the employer's claim against the insurance company

because even though the employee's underlying complaint alleged that the employer "negligently injure[d]" the employee, "[f]rom an examination of the complaint and the 'quality and purpose of the transaction as a whole' it is obvious that [the employee] was not seeking damages for injuries to himself caused by an accident or negligence" but rather "compensatory and punitive damages for an alleged willful and intentional act committed upon him by the insured." *Id.* at 894 (quoting *Messersmith*, 133 N.E. at 433).

Applying this principle to the complaint filed by John Doe 2 in New Mexico, this Court reaches the same conclusion. The complaint, read as a whole, clearly seeks damages for Defendant's improper sexual conduct. John Doe 2 presents his claim as an "action for damages based on personal injury caused by childhood sexual abuse" for purposes of the applicable statute of limitations, *see* Doc. 2-2, p. 4, and the gravamen of the complaint is Defendant's repeated molestation of John Doe 2 over the course of several years when he was a minor. The complaint's single mention of an operation on ingrown toenails and general reference to medical negligence do not alter the "quality and purpose" of the lawsuit. The alleged conduct cannot reasonably be considered a "medical incident" that occurred in the context of providing medical services, and therefore Plaintiff is entitled to the declaratory judgment it seeks.[3]

The cases on which Defendant relies do not suggest a different result. In both cases, the state court reviewed the pleadings in the underlying liability action and determined that there was a genuine question whether or not the allegations in the

---

[3] This is especially true because the Policy contains explicit exclusions from coverage for liability arising from sexual conduct or criminal acts and the allegations that make up the "quality and purpose of the transaction as a whole" clearly fall within both of those exclusions.

7

complaint could fall within the applicable insurance policy. For example, in *Madden v. Continental Gas Co.*, 922 S.W.2d 731 (Ark. App. Ct. 1996), the plaintiff sued the holder of its legal malpractice policy, which covered liability arising from professional services but excluded fraudulent actions. The court of appeals observed that the plaintiffs in the underlying litigation, the Frandsens, in addition to allegations of fraud, alleged that

> the appellants undertook legal representation of the Frandsens and committed malpractice; that they had a fiduciary duty to the Frandsens due to the attorney/client relationship; that they breached their duties as attorneys by failing to perform work that they had promised to do; that they failed to properly describe real estate; and that they failed to advise the Frandsens of their rights as stockholders.

*Id.* at 734. These allegations were sufficient to establish a possibility that the plaintiff's liability might fall within the coverage of its legal malpractice insurance, and the insurance company had a duty to defend.

Similarly, in *Murphy Oil*, the plaintiff sought a defense from its insurance company in a lawsuit arising out of petroleum spills. The state supreme court concluded that "the Pollution Exclusion and its exception could be read either as Murphy Oil interprets it or in accordance with Unigard's reading" and therefore held that the insurance company had a duty to defend. 61 S.W.3d at 814. Here, in contrast, the only allegation that could plausibly be considered a medical incident and not within the sexual or criminal conduct exclusions is the operation on John Doe 2's ingrown toenails without consent. That single allegation, clearly unrelated to the "quality and purpose of the transaction as a whole," *Fisher*, 398 S.W.2d at 893, cannot be considered to create "any *possibility* that the injury may fall within the policy limits" and therefore support a duty to defend. *Madden*, 922 S.W.2d at 734. No reasonable factfinder could conclude that the allegations in the state-court complaint could possibly be covered by the Policy.

## IV. CONCLUSION

For these reasons, the Court determines that Plaintiff State Volunteer Mutual Insurance Company has no duty to defend or indemnify Defendant Guy R. Rosenschein in the underlying New Mexico lawsuit. **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 18) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Deem Matters Admitted (Doc. 16) is also **GRANTED**.

**IT IS SO ORDERED** on this 2nd day of August, 2021.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE